[Civ. No. 7345. Third Dist. July 16, 1947.]

V. AKINS et al., Respondents, v. RIVERBANK CANNING
COMPANY (a Corporation), Appellant.

F. M. Brack for Appellant.

A. G. Bailey for Respondents.

PEEK, J.—The present controversy arises out of the alleged failure of defendant to supply boxes to plaintiffs for the purpose of picking and shipping tomatoes to defendant's cannery, as provided in the contracts between the parties. The court, sitting without a jury, found in favor of plaintiffs, and from the judgment entered accordingly defendant has appealed.

Plaintiffs by their complaint allege that on March 25, 1944, two contracts were entered into with defendant, whereby plaintiffs agreed to sell and defendant agreed to buy all tomatoes grown on certain described lands in Yolo County; that when the tomatoes were ready for harvest plaintiffs so notified defendant and requested boxes as provided in said agreements; that although repeatedly requested so to do defendant furnished only a small portion of the boxes necessary, and that as a proximate result thereof plaintiff suffered loss and damage.

Defendant's answer, to which were attached copies of the contracts, admitted the execution thereof and affirmatively alleged that by reason of circumstances and conditions beyond its control which were specifically set forth in said contracts as excuses for nonperformance, defendant was unable to furnish boxes to plaintiffs. From the testimony of F. Akins it appears that at the outset of the picking of the crop some boxes were obtained by plaintiffs from other growers and personally hauled to their lands; that in response to their continual requests, defendant's representative at Woodland, Mr. Moddison, told plaintiffs he would have boxes for them in a few days but he kept stalling them and finally stated they were too small as growers and were too far away to get boxes to them. After it appeared they would get no boxes from defendant, plaintiffs, in an endeavor to dispose of the tomatoes and with the knowledge of the defendant, contacted another cannery which agreed to take the crop if a release could be obtained from defendant. Originally defendant refused plaintiffs' request for a release, and although defendant finally acquiesced it was not until after the tomatoes had become overripe, rotted, and were of no value.

The plaintiff, V. Akins, testified that plaintiffs at no time received any boxes in accordance with their contracts with defendant, which called for roadside delivery; that the only boxes obtained were those personally taken by plaintiffs from three different ranches and hauled to plaintiffs' property, but that many of the boxes so obtained were broken and useless. In reply to his questions Moddison told him also that he could not get boxes for plaintiffs because they were "too small a grower and too far away," and when he pointed to boxes then at the defendant's loading platform the agent told him such boxes were for other persons. The witness further testified he went to various ranches, including Moddison's landlord and personally observed that they were getting

boxes. At the beginning of the picking season he was told by said agent to hold up the picking for a couple of days and it would be easier to get boxes but at no time was he told that the cannery could not take the tomatoes. In accordance with the agent's suggestion plaintiffs did wait a couple of days and thereafter were at the loading platform every day but were unable to obtain any boxes although on various occasions he saw many boxes there and likewise saw many trucks come in and load up with boxes.

Defendant then called as a witness Mr. Sam P. Cava, its production superintendent, and by him offered to prove that because of a labor shortage at its cannery defendant was able to accept only a small amount of the tomatoes normally handled. An objection by counsel for the plaintiffs, on the ground that defendant's offered excuse for non-performance had not been alleged in the answer, that there was no proper foundation therefor, and that no notice of the shortage had been given to plaintiffs, was sustained by the court.

Defendant then called its Woodland agent, Mr. Moddison, who testified that at the start of the picking season there were 44,000 boxes in the Woodland district and 17,000 in the "growers'" district (we assume this to mean the plaintiffs' district) but that plaintiffs were so late in responding to his notification to them that boxes were available, that when they did arrive at the loading platform in Woodland the supply was exhausted. He further testified he told plaintiffs he would be able to supply them with boxes; that boxes were coming in to the platform but they were going out to growers on the large trucks; that 95 per cent of the boxes were being delivered direct to the growers. Trucks would come in at night, unload and by morning there would be no boxes. He also stated he told plaintiffs he was not getting boxes because they were all tied up at the cannery. He denied having told plaintiffs they were too small as growers but admitted that he did say they were too far away. His further testimony was that he could not get trucks to deliver the boxes to them because such deliveries were outside the contract the defendant cannery had with the trucking company; that he had a verbal agreement with plaintiffs to do their own hauling of the boxes; that sometimes plaintiffs would come in to the platform in the morning and wait all day for boxes but with no success; that the cannery entered into contracts with other growers after the execution of

plaintiffs' contracts and boxes were delivered to them and the tomatoes were accepted at the cannery.

At the conclusion of Moddison's testimony defendant again offered to prove by Cava that the labor shortage at the plant in Modesto was the reason for the failure to get boxes to Woodland. However, the court again sustained plaintiffs' objections to such testimony, which ruling the appellant assigns as error and sole ground for reversal.

The defendant's offer of proof with respect to the proposed testimony of the witness Cava included no evidence as to apportionment or attempted apportionment of the available boxes but related solely to the potential production of defendant's cannery under normal conditions and the reduced production at the time in question by reason of the alleged labor shortage. There is no showing that he could have testified as to any other matter, nor was there any attempt at the trial to show that he would have been able to testify on the question of proration, if any, of the boxes. From the record it appears that the only person who could have testified to such facts was the defendant's Woodland agent, Moddison, who was in charge of the platform from which the boxes were distributed. However, when Moddison was called as a witness for defendant, counsel made no attempt to introduce any such evidence then or at any stage of the proceeding. On the contrary, the testimony of Moddison indicates that in fact there was discrimination rather than proration.

While it is true, as defendant contends, that section 13 of its contract with plaintiffs provides that "in case . . . shortage of labor or supplies . . . affecting in any way the conduct of Buyer's business or canning operations, including any obligation . . . to furnish boxes . . . Buyer will be excused from performance . . . and Buyer may . . . accept such portion of such tomatoes as Buyer, in its judgment, can economically handle," it also must be noted that by section 11 defendant agreed, for the convenience of plaintiffs, to "furnish boxes . . . for the delivery of tomatoes . . . but shall not be liable for failure to do so beyond the exercise of reasonable effort and care."

It is the statutory law of this state that a contract must be read as a whole so as to give effect to each part if reasonably practical, with each clause helping to interpret the other. (Civ. Code, § 1641.) Therefore section 13 of the con-

tract before us cannot be read to the exclusion of section 11. In other words, in the event of the happening of any of the contingencies contained in section 13 defendant would be excused from performance or if in "its judgment" it could "economically" handle only a portion of the tomatoes it could do so. Obviously under the facts herein defendant did exercise its judgment and determined that it could "economically handle" only a limited amount of tomatoes. However, by section 11 it also had agreed to furnish boxes to plaintiffs and could be held liable for failure to do so if it did not exercise "reasonable effort and care." From this it would seem to follow that a "shortage of labor" could be an excuse for nonperformance only if such contingency were the proximate cause of plaintiffs' damages.

Plaintiffs, however, allege and contend that their damage was the result of the failure of defendant to supply boxes as it agreed, thereby placing in issue the quoted portion of section 11.

Defendant's agent Moddison himself testified that growers other than plaintiffs had boxes delivered directly to their farms pursuant to contracts identical with those here in issue. Even assuming that the portion of the contract by which defendant agreed to furnish boxes "at roadside" had either been waived by plaintiffs or that an oral agreement had been made modifying the same, as defendant's agent testified, whereby plaintiffs agreed to haul boxes to their property, nevertheless it is uncontradicted by the evidence that plaintiffs received no boxes and it is likewise uncontradicted that boxes were available and were supplied to other growers. Under such circumstances it cannot be said that defendant exercised "reasonable effort and care" to supply boxes to plaintiffs in accordance with the specific terms of said contracts.

Therefore, the contingency or circumstance which caused the nonperformance by defendant was not defendant's difficulty in obtaining adequate labor at its cannery, but rather its own voluntary act in the admitted discriminatory distribution of boxes at its Woodland loading platform.

The question thus presented falls squarely within the rule stated in section 464, subsection 1, Restatement of the Law of Contracts:

"Where a promisor makes two or more bargains and facts then exist or subsequently occur that on grounds of impossibility prevent the imposition of a duty to perform all the

promises in their entirety, or that discharge a duty to do so that has arisen, but partial performance capable of ratable apportionment to the several bargains is possible, the promisor is under a duty to make such apportionment and is otherwise discharged . . ."

This same rule is likewise set forth in Williston on Contracts, revised edition, volume 6, section 1962, page 5506, where it is said:

"Because of excusable impossibility a contractor may be unable to fulfill all of a number of similar obligations and yet could fulfill any one of those obligations if he totally disregarded the others. In such case the contractor is under a duty to apportion the possible performance prorata among the several contracts, if he is to be excused from further liability."

No case has been cited by counsel, nor has our research revealed any, wherein the specific question here in issue has been determined by the courts of this state. However, section 1514 of the Civil Code, though not directly in point, does, at least in theory, approve the rule of apportionment as mentioned and supports the conclusion we have reached herein.

Here the parties by virtue of the peculiar nature of the contracts and the type of activity involved, obviously contemplated that similar contracts would be made with other growers. Each of such contracts constituted part of an over-all plan known to all the growers, none of whom could reasonably believe that if future circumstances should prevent the complete performance of all the contracts he would be entitled to preferential treatment under his agreement or that the cannery at its own choosing might discriminate against him in favor of others. Considered from this view the parties clearly must have intended that in the event of the happening of one or more of the contingencies enumerated in section 13 of the contract which would result in only a partial impossibility, all of the growers with identical contracts would be affected equally, and there would be an apportionment of the supply of boxes consistent with the exercise of reasonable effort and care, as stated in section 11.

Under the circumstances herein it would be as manifestly unfair to compel defendant to carry out in full its contract with plaintiffs to the exclusion of all others as it would be to allow defendant to carry out its contracts with some of the

other growers and to escape its obligation to plaintiffs by proof of only a partial impossibility of performance.

The labor shortage relied upon by defendant was not such as to wholly stop defendant's activities. Its proffered testimony would have shown nothing more than reduced canning activities, which in no way could excuse its discrimination against plaintiffs—a fact admitted by its own agent. If defendant failed to equitably distribute the boxes, or failed to properly guard them to enable it to do so, then defendant alone was at fault. It was within its power, at least to a degree, to carry out its contracts with plaintiffs. Defendant knew it could not supply all of the boxes necessary, yet it chose to discriminate against plaintiffs to the benefit of other growers. Such acts were neither fair, reasonable nor proper under the circumstances.

Finally, it may be said that by reason of the testimony of its agent Moddison, even if defendant had been allowed to introduce the proffered testimony concerning a labor shortage, such testimony in no way could have changed the effect of its discrimination in the distribution of the boxes. Admittedly the cannery was not shut down completely, admittedly some boxes were available, admittedly some growers received them, and admittedly plaintiffs did not.

In the light of such uncontradicted facts how, then, can it be said that defendant's voluntary refusal to supply plaintiffs with boxes as it contracted to do, and its delivery of the same to other persons, rendered the contracts impossible of performance or excused its performance. As shown by defendant's own testimony it had precluded itself from performing its obligation to plaintiffs under this contract, either in whole or in part, by its discriminatory acts. There was no prejudicial error in the trial court's refusal to admit the evidence of a labor shortage.

For the foregoing reasons, the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied August 8, 1947, and the following opinion was then rendered:

THE COURT.—Appellant's petition for rehearing raises the point that the affirmance of the judgment of the trial court is erroneous in that on the basis of our holding the proper measure of damages should have been the difference between

the amount actually received for the crop and what the plaintiff would have received had there been proration.

In our opinion filed herein we held that the plaintiffs' damage was shown to have been due to defendant's discrimination and failure to prorate. However, at the trial, the defendants offered no evidence to show that the extent of the plaintiffs' damage would have been other than the amount awarded in the event there had been proration.

The question with respect to the question of damages not having been raised in the trial court, cannot be urged for the first time here on appeal, and the issue on this point does not affect the basis of our holding.

Appellant's petition for a hearing by the Supreme Court was denied September 8, 1947. Schauer, J., voted for a hearing.