## 28294. MANSFIELD PROPANE GAS COMPANY, INC. et al. v. FOLGER GAS COMPANY et al.

GUNTER, Justice. This is an "energy crisis" case involving the validity and interpretation if valid of a contract between the parties for the sale and delivery of propane gas.

The appellants (Mansfield) were the defendants in the trial court. The appellees (Folger) brought an action in the trial court against Mansfield seeking a declaration of rights pursuant to the alleged contract and injunctive relief requiring the parties to abide by the contract as interpreted.

By agreement the case was heard and determined by the trial judge who rendered findings of fact, conclusions of law, and a judgment in favor of Folger. Mansfield has appealed from that judgment.

Having read the record in this case, we conclude that there is only one issue for determination in the appeal namely, whether the Georgia Uniform Commercial Code is applicable to the subject contract.

The trial judge found that the contract between the parties was a valid and binding contract, and we agree. The contract provided that Mansfield would sell and deliver to Folger during a five-year term (or possible seven-year term) the latter's propane gas requirements up to a maximum of ten million gallons during the entire term at prices specified in the contract. While Mansfield had many other customers, Folger was its only customer having a written contract with Mansfield that required the sale and delivery of a maximum number of gallons of propane gas during a stipulated term.

The contract had been in effect for approximately one year and sales and deliveries pursuant to its terms had gone smoothly until the beginning of the "energy crisis" and a shortage of propane gas supply. On June 18, 1973, Mansfield notified Folger that it intended to "allocate" its supply of propane gas among all of its customers pursuant to Section 109A-2—615 of the Georgia Uniform Commercial Code. Folger contended that its requirements of propane gas were not subject to "allocation," and since Mansfield had an adequate supply to furnish all of Folger's requirements, then Mansfield had to do so first and could then allocate its remaining supply among its other customers.

The trial judge held that the subject contract was not governed by the provisions of the Georgia Uniform Commercial Code, and he

then found in favor of Folger and ordered that the contract be performed by Mansfield as written. Since the adoption of the Georgia Uniform Commercial Code we think that every contract for the sale of goods is governed by Article II of the Code, and this is true whether the action brought with respect to such a contract is deemed to be on the equitable side or the law side of the court.

We therefore hold that the subject contract must be interpreted pursuant to the terms of Article II of the Georgia Uniform Commercial Code.

With respect to "allocation" Code Ann. § 109A-2—615 provides as follows: "Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance: (a) Delay in delivery or non-delivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid. (b) Where the clauses mentioned in Paragraph (a) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable. (c) The seller must notify the buyer seasonably that there will be delay or non-delivery and, when allocation is required under Paragraph (b), of the estimated quota thus made available for the buyer."

So far as we have been able to determine there has been no court construction of this provision of the Uniform Commercial Code. Therefore, this case appears to be one of first impression.

Folger argues that Code Ann. § 109A-2—615 is not applicable in this case because Mansfield, the seller, has assumed a greater obligation to Folger by virtue of the written contract between them than Mansfield has assumed with any of its other customers. None of Mansfield's other customers have written contracts providing for a maximum number of gallons of propane gas to be sold and delivered over a term of years.

Therefore, Folger argues that its contractual relationship with Mansfield makes it an exception to the "allocation" rule

provided for in Code Ann. § 109A-2—615.

The other side of the argument is that since all sales are sales by contract, whether written or oral, and since subsection (b) of Code Ann. § 109A-2—615 provides that when only a part of the seller's capacity to perform is affected, the seller "must allocate production and deliveries among his customers but may at his option include regular customers not then under contract," then any exception or exemption from the "allocation" rule must be supported by an affirmative and explicit provision in the contract to the effect that the seller will not "allocate" in the event that his supply or capacity is affected so that his "performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made."

As stated before, we have found no reported case adopting either of these arguments as against the other in interpreting this provision of the Uniform Commercial Code. Ronald Anderson in his treatise on the Uniform Commercial Code seems to adopt a construction favorable to Mansfield as follows: "The Code Section (2-615) expressly recognizes the right to impose, by the terms of the contract, a higher standard upon the seller, with the result that the parties may restrict the excusing contingencies to those specified in the contract or may eliminate the protection given by the code section by imposing upon the seller an absolute contractual duty to make delivery." Anderson, Uniform Commercial Code, Vol. II, Section 2-615; 5 (2d Ed.). An obscure remark in 67 AmJur2d 512 also seems to substantiate a construction favorable to Mansfield's position when in talking about this code section the authors state: " . . . (1) The seller must not have assumed 'a greater obligation' such as giving an unconditional guarantee of performance . . ."

We therefore construe Code Ann. § 109A-2—615 to mean that in order for there to be an exception to and an exemption from the rule of allocation applicable to a contract of sale, such a contract must contain an affirmative provision that the seller will perform the contract even though the contingencies which permit allocation might occur.

This holding means that the parties to the contract in the instant case are bound by the rule of allocation contained in Code Ann. § 109A-2—615, and the judgment of the trial court must be reversed.

Since Code Ann. § 109A-2—615 also provides that allocation must

take place in a manner that is "fair and reasonable," this issue remains for decision in the trial court. We therefore reverse the judgment and remand for further proceedings consistent with this opinion.

*Judgment reversed. All the Justices concur.*

ARGUED OCTOBER 9, 1973 — DECIDED MARCH 7, 1974 — REHEARING DENIED MARCH 21, 1974.

*Robinson, Buice, Harben & Strickland, Frank W. Armstrong,* for appellants.

*Telford, Stewart & Stephens, W. Woodrow Stewart, John E. Girardeau,* for appellees.

ON MOTION FOR REHEARING.

PER CURIAM. The appellees have made a motion for rehearing which we have carefully considered, and the same is hereby denied.

The appellants have made a motion for rehearing in which they contend that in the original opinion this court failed to rule upon an important issue in the case, namely, the price that Mansfield can charge Folger under the terms of the contract for propane gas "allocated" by Mansfield to Folger.

We acknowledge that this issue was decided by the judgment of the trial court. However, the original decision of this court reversed the judgment of the trial court and remanded the case for further proceedings in the trial court consistent with the opinion and decision of this court.

Code Ann. § 109A-2—615 (b) provides that "allocation" must take place in a manner that is "fair and reasonable." We construe this language to mean that the amount allocated must be fair and reasonable and the price charged for the amount allocated must be in accordance with the provisions of the contract. Both of these issues are appropriate for future determination in the trial court on the basis of concrete facts with respect to the amount of propane gas allocated and on the basis of concrete facts with respect to the cost of propane gas to Mansfield which is allocated among Folger and all other customers of Mansfield.

*Motions for rehearing denied. All the Justices concur, except Hall, J., not participating.*