[Civ. No. 16109. Third Dist. Aug. 26, 1977.]

RICHARD E. TERRY et al., Plaintiffs and Appellants, v.
ATLANTIC RICHFIELD COMPANY et al.,
Defendants and Respondents.

## COUNSEL

Richard E. Terry, in pro. per., Gunheim & Yturbide, and Michael Obrand for Plaintiffs and Appellants.

Morrison & Foerster and F. Bruce Dodge for Defendants and Respondents.

## OPINION

**FRIEDMAN, Acting P. J.**—This is a breach of contract action emanating from the nationwide gasoline shortage of 1973. Defendant Atlantic Richfield Company (ARCO) had agreed to supply all the gasoline "requirements" of plaintiffs, who operated a service station. In May 1973 requests from the federal government impelled ARCO to allocate gasoline supplies among its dealers. Plaintiffs were dissatisfied with their allocation and filed this lawsuit that same month. They sought an injunction plus general and punitive damages. Meanwhile the allocation program was proceeding. Plaintiffs' motion for a preliminary injunction was denied. Eventually ARCO moved for a summary judgment. The trial court had before it an extensive array of declarations and depositions. The summary judgment was granted and Terry appeals.

ARCO's "requirements" contracts contained a *force majeure* clause permitting it to allocate supplies among its customers in case of a gasoline shortage. Before adoption of the Uniform Commercial Code, California law had read into that sort of clause an implied covenant of good faith. (*Milton* v. *Hudson Sales, Corp.,* 152 Cal.App.2d 418, 427, 431 [313 P.2d 936].) The doctrine of commercial frustration which excuses full performance of supply contracts is now codified in section 2615 of the California Uniform Commercial Code. Subdivision (a) of that

section describes the contingencies which will excuse. Subdivision (b) permits partial performance when full performance becomes impossible; it permits the seller to allocate his available supply among his customers in any manner *which is fair and reasonable.*[1] Subdivision (c) requires seasonable notification of the buyer's estimated quota. By its terms, section 2615 governs except where the seller has assumed a greater obligation. It governs here. (See generally, 1 Cal. Commercial Law (Cont.Ed.Bar 1966) § 10.55; Hawkland, *The Energy Crisis and Section 2-615 of the Uniform Commercial Code* (1974) 79 Com. L.J. 75.)

Plaintiffs opened their station in December 1971. During the first part of 1972 various circumstances kept their sales volume low. Leaks occurred in the storage tanks; tanks had to be replaced; for a time only one grade of gasoline could be stored. Plaintiffs charge that wrongful acts of defendant also impaired their sales capacity, including defendants' failure to advertise their station on freeway billboards and defendants' unreasonable delay in providing an aerial sign large enough to be visible from the freeway. In the first quarter of 1972 plaintiffs sold approximately 38,000 gallons of gasoline; in the second quarter, approximately 60,000 gallons. Sales in 1973, preceding the rationing, were much higher. In the first quarter of 1973, plaintiffs sold 90,000 gallons; in the month of April 57,000 gallons, and in May 50,000 gallons.

On May 18, 1973 ARCO instituted a ratable distribution of available gasoline among its dealers based upon each dealer's monthly volume for the corresponding month in 1972. During the last part of May 1973 customers were allocated 84 percent, in June 96 percent and in July, August and September 100 percent of their volume for the corresponding months of 1972. The program provided for hardship adjustments.

---

[1]California Uniform Commercial Code section 2615 declares:

"Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

"(a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the noncurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

"(b) Where the causes mentioned in paragraph (a) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.

"(c) The seller must notify the buyer seasonally that there will be delay or nondelivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer."

Imposition of the quota system, measured by 1972 sales, sharply reduced the volume of gasoline available to plaintiffs in June 1973 and later months. Believing that their 1972 history of low volume brought them within ARCO's hardship criteria, plaintiffs applied to ARCO for an increased allocation. After an investigation, ARCO officials rejected the application. Plaintiffs then filed this lawsuit. Effective January 15, 1974, the Federal Energy Office took over administration of the allocation program. In February 1974, plaintiffs received an increased allotment from the Energy Office. ARCO then supplied plaintiffs with increased gasoline in compliance with the federal directive.

Plaintiffs do not charge ARCO with violation of subdivisions (a) or (c) of section 2615. They claim only that their gasoline allocation did not meet the *fair and reasonable* standard of subdivision (b). The issue is even narrower. Plaintiffs do not dispute the fairness and reasonableness of ARCO's general system of allocation, rather that ARCO's actions were unfair and unreasonable as to plaintiffs.

I

In passing upon a motion for summary judgment, the trial court's *function is not to find the true facts in the case, but to determine whether a triable issue of fact exists.* (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 555 [122 P.2d 264]; *People* v. *Rath Packing Co.,* 44 Cal.App.3d 56, 61 [118 Cal.Rptr. 438].) If a triable issue of fact exists, it is error to grant a summary judgment. (*Schrimsher* v. *Bryson,* 58 Cal.App.3d 660, 663 [130 Cal.Rptr. 125].)

The central issue here is whether ARCO's allocation was conducted in the fair and reasonable manner specified by California Uniform Commercial Code section 2615, subdivision (b). ■ Except where there is no room for a reasonable difference of opinion, the reasonableness of an act or omission is a question of fact, that is, an issue which should be decided by a jury and not on a summary judgment motion. (*Joslin* v. *Marin Mun. Water Dist.,* 67 Cal.2d 132, 139 [60 Cal.Rptr. 377, 429 P.2d 889]; *R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 380 [57 Cal.Rptr. 841, 425 P.2d 785]; *Robinson* v. *City and County of San Francisco,* 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125]; see generally, Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867.)

Here, fairness and reasonableness are the twin criteria of legality. Like reasonableness, the fairness of conduct is an ad hoc characterization susceptible of assessment by the common experience of lay jurors. In *Mansfield Propane Gas Co., Inc.* v. *Folger Gas Co.* (1974) 231 Ga. 868 [204 S.E.2d 625, 628-629], as here, the "energy crisis" forced the supplier to cut deliveries of petroleum products. There, as here, the issue was whether the supplier's allocation was fair and reasonable as required by section 2-615 of the Uniform Commercial Code. The Georgia court viewed the issue as one of fact. (See also, 14 Duq. L.Rev. 235, 241-242 (1976).) So do we.

Nevertheless, an issue which is abstractly one of fact may be resolved by summary judgment if the moving party's declarations fully establish the claim or defense and his opponent's declarations fail to rebut it. (*Joslin* v. *Marin Mun. Water Dist., supra,* 67 Cal.2d at pp. 148-149.) To put the matter otherwise, the issue of fact becomes one "of law" and loses its "triable" character if the undisputed facts leave no room for a reasonable difference of opinion. (See, e.g., *Schrimsher* v. *Bryson, supra,* 58 Cal.App.3d at p. 664.)

II

We examine the undisputed facts to determine whether the fairness and reasonableness of ARCO's allocation system were reasonably debatable.

In support of its summary judgment motion, ARCO submitted declarations stating that it had selected monthly sales throughout 1972 as the allocation base in conformity with guidelines suggested by the Federal Office of Oil and Gas in May 1973. (The base period selection was also consistent with a mandatory allocation system which the Federal Energy Office later adopted.) The 12-month span of 1972 would provide adjustments for seasonal variations. The months of March and April 1973 were rejected as a possible base period; at that time the developing shortage had already commenced to distort the pattern of gasoline orders; buyers with large storage capacity increased their orders; sporadic terminal shortages caused isolated instances of short supply. The May 1973 program allocated available supplies ratably, each customer receiving a monthly supply equal to his purchases in the corresponding month of 1972, multiplied each month by a percentage applicable to all customers, that percentage being determined by ARCO's total available supply in relation to its 1972 supply. All dealers

were treated alike; the company drew no distinction between contract dealers (such as plaintiffs), lessee-dealers and stations operated by ARCO-owned subsidiaries. After the allocation system was instituted, gasoline stations other than plaintiffs were able to operate throughout the month by cutting back their operating hours and by limiting sales to any one customer. Plaintiffs kept their station open 24 hours per day for unlimited sales, thereby exhausting their gasoline allotment in the first week of each month.

Plaintiffs' counterdeclarations conceded the general fairness of AR-CO's allocation program but averred that it was unfair as to plaintiffs. Plaintiffs' station was new in 1972 and had not gained the volume which would have permitted a sustained supply under the 1973 allocation system; the system forced plaintiffs to cut their business hours by 75 percent while other ARCO stations were able to operate throughout most of the month; ARCO unreasonably delayed providing an aerial sign visible from the nearby freeway, ultimately supplying an 85-square foot sign when a 160-foot sign was needed; the company refused to identify plaintiffs as an ARCO dealer on freeway billboards; during the shortage period, ARCO commenced supplying gasoline to six stations newly opened by an ARCO subsidiary.

■ The statutory demand for a "fair and reasonable" allocation of short supplies denotes a collective quality characterizing the supplier's treatment of his customers as a group. An individualized approach, geared solely to the needs of particular customers, may provide adequacy to some, insufficiency to others. A fair and reasonable allocation distributes benefit and hardship equably.[2] Decisional law preceding the California Uniform Commercial Code obligated the seller to adopt a proration plan applicable to the entire group of customers. (*County of Yuba* v. *Mattoon*, 160 Cal.App.2d 456, 458 [325 P.2d 162]; *Akins* v. *Riverbank Canning Co.*, 80 Cal.App.2d 868, 873 [183 P.2d 86]; Rest., Contracts, § 464, subd. (1), pp. 873-874; 6 Williston on Contracts (rev. ed.), § 1962, pp. 5506-5507; cf. Civ. Code, § 1514.) The official comment appended to section 2615

---

[2]We do not imply that California Uniform Commercial Code section 2615, subdivision (b), prohibits a quota system providing for individual hardship adjustments. Faced with the complexities of gasoline allocation, the Federal Energy Administration has stated: " '[N]o regulatory program involving the rigid maintenance of historical relationships can satisfactorily anticipate all situations which might conceivably arise involving the application of the regulations to a particular factual pattern . . . The mechanism through which [hardship] waivers are issued is the exceptions process, which operates in an adjudicatory manner on a case-by-case basis.' " (Quoted in *Amtel, Inc.* v. *Federal Energy Administration*, 536 F.2d 1378, 1382.)

demonstrates perpetuation of this decisional concept. Comment 11 declares: " . . . [I]f the situation is such that [the seller's] customers are generally affected he must take account of all in supplying one . . . [I]n case of doubt his contract customers should be favored and supplies prorated evenly among them regardless of price."

Plaintiffs' demand for treatment shaped to their unique circumstances runs counter to statutory insistence upon collective fairness. The allocation program contained a set of hardship criteria but plaintiffs were unsuccessful in meeting these criteria.[3] ▮ ARCO's ratable supply plan was prima facie fair and reasonable to its customers. (*County of Yuba* v. *Mattoon, supra; Akins* v. *Riverbank Canning Co., supra.*) The fact that some other formula might have increased plaintiffs' allocation does not require rejection of the formula actually adopted. (*Intermar, Inc.* v. *Atlantic Richfield Company,* 364 F.Supp. 82, 99.) Fashioned to support their claim to individualized treatment, plaintiffs' summary judgment declarations failed to rebut ARCO's prima facie showing of fairness and reasonableness.

No contractual commitment supports the charge that ARCO caused a reduction in plaintiffs' 1972 volume by refusing to supply an aerial sign and freeway advertising. Plaintiffs' purchase contract contained no advertising commitment on ARCO's part. Included in the record is an equipment loan contract which shows that ARCO was lending plaintiffs an 85-foot aerial sign. The record shows no agreement for a 160-foot sign for freeway advertising.

On appeal plaintiffs charge ARCO with discrimination by offering rental rebates to lessee-dealers, but not to independent dealer-owners, such as plaintiffs. The claim was not put before the trial court at the time of the summary judgment motion but was tardily raised by a new trial motion. Plaintiffs support the charge only by references to portions of the appeal record which reflect an unsupported charge in the trial court. Plaintiffs fail to explain how a dealer-owner who paid no rent could be given a rental rebate; point to no agreement by ARCO to pay plaintiffs a rebate; point to no deception or misrepresentation concerning a rebate. The charge is a makeweight, without support in the record.

---

[3]In the trial court, plaintiffs charged that their 1972 "base period" operations had been disrupted by the repair and reconstruction of gasoline storage tanks. Plaintiffs asserted that ground as the basis for an application to ARCO for an allotment increase. When ARCO learned that the repair work had been completed in May 1972 and had no effect on June sales, it rejected the application. Plaintiffs do not press this claim on appeal.

In support of its application for summary judgment, ARCO submitted a declaration that construction of new service stations had been suspended on July 10, 1973; excepted from the suspension were those stations already under construction and stations as to which the company had pre-existing contracts for completion. Plaintiffs responded with a counter-declaration designating six stations which had been allegedly opened by an ARCO-owned subsidiary after the allocation program commenced.

As to three of these stations, ARCO had undertaken contractual commitments and construction of the stations had commenced well in advance of the May 1973 supply limitation. When a seller must allocate a short supply, section 2615, subdivision (b) permits him "at his option [to] include regular customers not then under contract." A fortiori, he may include in the allocation those buyers with whom he had contracts antedating the shortage. This view of the statute is supported by comment 11, which accompanies the California provision. The comment declares: " . . . the seller may also take account of contracts later in date than the one in question." The company's fulfillment of its pre-existing contractual commitments did not make its allocation system unfair or unreasonable.

A fourth service station had opened in October 1972 and lacked any base period history preceding that month. The hardship provisions of the ARCO allocation program established a formula for estimating the yearly consumption of such a station; this formula was applied to fix its supply quota for the months of May through September 1973. Plaintiffs failed to show preferential or arbitrary treatment of the station; that the formula supplied it with a greater allocation than plaintiffs' creates no inference of a breach of section 2615, subdivision (b). (See *Intermar, Inc.* v. *Atlantic Richfield Company, supra,* 364 F. Supp. at p. 99.)

Two other newly opened stations received gasoline allotments from the Federal Energy Office after ARCO's company-operated allocation program was succeeded by the mandatory, federally administered program in January 1974. ARCO supplied gasoline to these stations pursuant to the federal allotment program, as it did to plaintiffs. The mandatory federal program was authorized by the Emergency Petroleum Allocation Act of 1973, which provided in part that compliance with federal allocation orders would constitute a defense to any breach of contract action. (15 U.S.C. § 755(c).) In section 2615, subdivision (a), the California Uniform Commercial Code fully recognizes governmental

restrictions as one kind of excuse for the nonperformance of commercial commitments. A fortiori, distribution directed or limited by governmental order does not violate the "fair and reasonable" criteria of subdivision (b).

Although the declarations of the party resisting a summary judgment are to be liberally construed in his favor, a summary judgment is proper if the declarations of the moving party state facts which justify a judgment in his favor and the counterdeclarations do not supply evidence to create a triable issue of fact. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953]; *Wood* v. *Brown*, 39 Cal.App.3d 232, 239 [114 Cal.Rptr. 63].) The declarations in support of ARCO's summary judgment motion established prima facie that its allocation system was fair and reasonable, hence that section 2615, subdivision (b) supplied a complete defense to plaintiffs' breach of contract action. Plaintiffs' counterdeclarations failed to produce any facts which might reasonably cause differences of opinion over ARCO's compliance with section 2615, subdivision (b). In the absence of an issue of fact which was triable, the summary judgment was properly granted.

Judgment affirmed.

Paras, J., and Reynoso, J., concurred.

A petition for a rehearing was denied September 21, 1977, and appellants' petition for a hearing by the Supreme Court was denied October 27, 1977.