## ALIMENTA (U.S.A.), INC.,
**Plaintiff–Appellant,**

v.

## CARGILL, INCORPORATED,
**Defendant–Appellee.**

No. 87–8771.

United States Court of Appeals, Eleventh Circuit.

Dec. 8, 1988.

W. Lyman Dillon, Hansell & Post, Trammell Newton, Atlanta, Ga., for plaintiff-appellant.

William H. Boice, Kilpatrick & Cody, Kenneth S. Canfield, Paul A. Raney, Atlanta, Ga., for defendant-appellee.

Before VANCE and HATCHETT, Circuit Judges, and NESBITT, District Judge.*

* Honorable Lenore C. Nesbitt, U.S. District Judge for the Southern District of Florida, sitting by designation.

NESBITT, District Judge:

In July 1980, Alimenta (U.S.A.), Inc. ("Alimenta") entered into seven contracts with Cargill, Incorporated ("Cargill") under which Cargill promised to deliver to Alimenta shelled, edible peanuts. The peanut crops were still in the field at the time the contracts were entered into. Later that summer there was a drought, the severity of which is disputed, which reduced the peanut crop yield.

Due to the decrease in the crop yield, Cargill notified Alimenta that it would proceed under U.C.C. § 2–615,[1] that is, Cargill would allocate deliveries of the 1980 peanut crop among its customers, distributors of peanuts with whom they had contracted. Alimenta was advised that it would receive approximately 65% of the peanuts for which they had contracted. Alimenta accepted their allocated share of the peanuts, but later filed suit for breach of contract against Cargill alleging that Cargill acted in bad faith in opting to proceed under Section 2–615. At trial the jury rendered a verdict for Defendant Cargill.

## I.

At the inception of the trial, the trial court granted Cargill's motion *in limine* thus barring Alimenta from referring to Cargill's size in any respect.[2] Alimenta urges the exclusion of this evidence was error entitling Alimenta to a new trial because the excluded evidence of Cargill's size and financial resources was relevant to the issue of commercial impracticability. This Court has previously stated that the standard by which impracticability should be judged is an objective one, *Alimenta (U.S.A.), Inc. v. Gibbs Nathaniel (Canada) Ltd.*, 802 F.2d 1362 (11th Cir.1986). Commercial impracticability under Section 2–615 focuses upon the "the reasonableness of the expenditure at issue, not upon the ability of a party to pay the commercially unreasonable expense." *Asphalt International, Inc. v. Enterprise Shipping Corp.*, 667 F.2d 261 (2nd Cir.1981); *Transatlantic Financing Corp. v. United States*, 363 F.2d 312, 319 n. 13 (D.C.Cir.1966) ("the issue of impracticability should no doubt be 'an objective determination of whether the promise can reasonably be performed rather than a subjective inquiry into the promisor's capability of performing as agreed.'"). Under this objective standard, the focus of the impracticability analysis is upon the nature of the agreement and the expectations of the parties, not to the size and financial ability of the parties. The fact that Cargill has grain elevators in Minnesota and barges on the Mississippi is irrelevant to the contract at issue and the expectations of the parties with respect to that contract. Cargill's net sales or net worth has no bearing upon the reasonableness of Cargill's decision to allocate production of peanuts. Accordingly, the trial court was correct in excluding evidence as to Cargill's size inasmuch as such evidence was not relevant to the issue of impracticability.

---

**1.** Section 2–615 of the Uniform Commercial Code provides as follows:

Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

(a) Delay in delivery or non-delivery in whole or in part by a seller who complies with subsections (b) and (c) of this Code section is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

(b) Where the causes mentioned in subsection (a) of this Code section affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.

(c) The seller must notify the buyer seasonably that there will be delay or non-delivery and, when allocation is required under subsection (b) of this Code section, of the estimated quota thus made available for the buyer. O.C.G.A. 11–2–615.

**2.** Cargill is a large agriprocessing and trading company based in Minneapolis, Minnesota. Cargill had between 30 and 40 billion dollars in sales in 1980.

This objective standard applies to both parties. A dealer opting under U.C.C. § 2–615 may not represent itself to the jury as a small company beset by circumstances with which it does not have the financial resources to contend. Just as Alimenta was barred from portraying Cargill as a large company who could have financially met its obligations, Cargill could not portray itself as a small company. The statements made by Cargill addressed the contracts at issue and the expected profits at the time of contracting and not, as Alimenta contends, the size of the Cargill peanut business. Thus Cargill did not improperly mislead the jury as to the issue they were to resolve: whether or not their performance was made impracticable by the crop failure.[3]

## II.

■ The District Court held that under Georgia law, in order to preclude reliance on the allocation remedy of O.C.G.A. § 11–2–615, the seller need expressly assume a greater obligation in the contract. This Court has previously dealt with this issue in *Alimenta (U.S.A.), Inc. v. Gibbs Nathaniel (Canada) Ltd.*, 802 F.2d 1362 (11th Cir.1986):

> In this diversity action we are bound by the Georgia Supreme Court's interpretation of this statute:
>
>> We therefore construe Code Ann. Sec. 109A–2–615 to mean that in order for there to be an expectation to and an exemption from the rule of allocation applicable to a contract of sale, such a contract must contain an affirmation provision that the seller will perform the contract even though the contingencies which permit an allocation might occur.
>
> *Mansfield Propane Gas Co., Inc. v. Folger Gas Company*, 231 Ga. 868, 870, 204 S.E.2d 625, 628 (1974).

\*　\*　\*　\*　\*　\*

Since neither of the contracts contained such an affirmative provision, Gibbs was entitled to allocate if it could satisfy the jury by a preponderence of the evidence that the occurrence of the contingency (drought) was not reasonably foreseeable when the contracts were entered into and that performance as agreed was made impractical thereby. Obviously, its burden entailed the production of persuasive factual evidence. *Gibbs*, 802 F.2d at 1363–64. As required under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the trial court sitting in diversity applied the law of Georgia. Inasmuch as this court is bound by the law of Georgia and prior opinions of this court, plaintiff's lengthy arguments citing authority and rationale of other jurisdictions are without effect.

## III.

Alimenta raises three separate errors relating to the trial court's failure to make factual findings as a matter of law, apparently contending that the court should have directed a verdict in their favor. In reviewing the district court's decision to deny a motion for directed verdict, the evidence must be viewed in a light most favorable to the prevailing party. *Prudential Insurance Company of America v. Schreffler*, 376 F.2d 397, 399 (5th Cir.1967). This court cannot delve into any conflicts of the evidence, but must assume that all such conflicts have been resolved by the jury in favor of the prevailing party. *Id.; Russell v. Baccus*, 707 F.2d 1289, 1292 (11th Cir. 1983).

### A. *Foreseeability of the Peanut Crop Failure*

■ Alimenta first argues that the issue of foreseeability of crop failure should not have gone to the jury. We find that there was sufficient evidence to submit this case to the jury. First, the evidence demonstrated that for the twenty years preceding the 1980 crop there had been a surplusage

---

**3.** Cargill has expected $3,000,000.00 in profits. Projected losses after the drought reduced the crop yield amounted to $47,000,000.00.

of domestic peanuts. Secondly, there was evidence that pre-harvest forward sales contracts are customary in the peanut industry. This contracting practice reflects the need to sufficiently schedule production to comport with the capacity of peanut shelling plants. In this manner, such contracts enable production capacity to be pre-committed and deliveries of the plant's output can be scheduled throughout the harvest season. The shelling plant can run more economically; the peanuts are shipped rather than stored; and the plant generates a steady cash flow from sales. Thirdly, improved agronomic and irrigation methods contributed to the industry's expectations of a continued surplusage of peanuts. There was evidence that the shortage of peanuts in 1980 was unprecedented and unforeseen by many if not all experts. The unforeseeability was also demonstrated by the effect of the drought on the peanut market prices: price of peanuts increase often exceeded one dollar per pound. In view of the evidence introduced during trial, it was proper for the trial court to submit the issue of the foreseeability of the crop failure to the jury for its determination.

### B. *Fairness of Peanut Allocation under § 2-615*

■ Alimenta contends the trial court erred by refusing to rule as a matter of law that Cargill's allocation to its distributors of the available peanuts was both unfair and unreasonable. O.C.G.A. § 11-2-615 provides that the seller may allocate in any manner which is fair and reasonable. Upon a review of the record it appears that there was sufficient evidence to submit this issue to the jury. *See Cosden Oil & Chemical Co. v. Carl O. Helm Aktiengesellschaft*, 736 F.2d 1064 (5th Cir.1984).

### C. *Seasonable Notice*

■ Thirdly, Alimenta claims that the trial court erred by refusing to rule as a matter of law that Cargill failed to give reasonable notice of its intention to allocate the peanuts under O.C.G.A. § 11-2-615. Section 11-2-615(c) provides that "the seller must notify the buyer seasonably that there will be a delay or non-delivery and, when allocation is required under paragraph (b) of this Code section, of the estimated quota thus made available for the buyer." O.C.G.A. § 11-2-615(c). Action is taken seasonably when it is taken within a reasonable time period, O.C.G.A. § 11-1-204(3), and the reasonable time for taking any action depends upon the nature, purpose and circumstances of such action, O.C.G.A. § 11-1-204(2). From a review of the record in this case there was sufficient evidence to submit the issue of seasonable notice to the jury for determination.

### IV.

■ Alimenta charges as error the trial court's refusal to give its instruction on the definition of good faith. In addition to the definition of good faith stated in the commercial code, Alimenta requested the following:

This obligation applies in determining whether Cargill acted in good faith in its dealings with customers prior to the time Cargill notified Alimenta of its intention to allocate, whether Cargill acted in good faith in making its decision to allocate, whether Cargill acted in good faith in deciding to discontinue all efforts to acquire peanuts as of November 12, 1980, and whether Cargill acted in good faith in dividing up peanuts among its customers.

In evaluating the instructions given to the jury, we consider the charges given as a whole. *Lacaze v. Olendorff,* 526 F.2d 1213, 1220, *reh'g en banc granted,* 526 F.2d 1223 (5th Cir.1976). The instructions given are reviewed in light of the evidence given, the pleadings in the cause and the arguments presented to counsel. *See First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1316 (5th Cir.1977). To determine whether the trial court was in error in refusing to give Alimenta's particular instruction, we look to whether the jury was misled by the instructions given and whether the jury understood the issues. *See id.* We find that the requested charge by Alimenta was mere surplusage, redundant to

the charges given by the court on O.C.G.A. §§ 11-2-615 and 11-2-616. The jury was instructed that Cargill had to prove that they had allocated in a fair and reasonable manner, that the law requires good faith on the part of Cargill, and that Cargill could allocate only if the crop failure was not reasonably foreseeable by commercial standards. While a general instruction as to the definition of good faith, i.e., honesty in fact, O.C.G.A. § 11-2-203, may have been helpful to the jury, the failure to give such a charge, viewing the instructions as a whole, was not error.

For these reasons, the rulings of the District Court are hereby AFFIRMED.