**Elgin Lumber and Supply Co., Inc., Counter Defendant-Appellee, v. O. Edwin Malenius, Counter Plaintiff-Appellant.**

Gen. No. 67–83.

Second District.

December 12, 1967.

Steinbrecher and Narusis, of Crystal Lake, for appellant.

Puklin and Puklin, of Elgin, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from the judgment of the Circuit Court of the 16th Judicial Circuit entered on the counterclaim against the counterplaintiff and for the counterdefendant.

On September 24, 1965, Elgin Lumber and Supply Co., Inc., counterdefendant-appellee, herein called the Lumber Co., sued the defendants, O. Edwin Malenius, counterplaintiff-appellant, herein called Malenius, and Eddy Construction Co., Inc., herein called the Construction Co., to recover for materials and services furnished to the defendants in the sum of $1,307.13. Malenius filed answer and counterclaim in this proceeding. In the answer, he denied that he owed the Lumber Co. any sum whatsoever, and in his counterclaim he asserted an action for malicious prosecution against the Lumber Co.

The counterclaim alleged that Malenius was a law-abiding citizen who had neither been suspected, nor had been guilty of any crime; that the Lumber Co., through one of its agents, maliciously, falsely and without probable cause, on or about November 5, 1964, signed a complaint charging Malenius with having committed the crime of deceptive practices in violation of section 17–1 of chapter

38 of the Criminal Code (Ill Rev Stats 1965, c 38, par 17-1), and specifically with having, with intent to pay for property or services of another, issued or delivered a check upon the State Bank of Woodstock, knowing it would not be paid by the depositary; and that the Lumber Co., after said criminal proceedings were instituted, pursued a course of conduct which "it consented to or ratified said criminal prosecution."

The counterclaim further asserted that the Lumber Co., by and through its officers and agents, then and there falsely, maliciously and without probable cause, procured the issuance of a warrant for the arrest of Malenius; that he was arrested, was compelled to enter into a recognizance, and to answer the charge; that on September 7, 1965, the State's Attorney of Kane County moved for, and the Circuit Court entered a nolle prosequi as to this complaint; that Malenius was then and there discharged and acquitted of the supposed offense; and that as the result of the Lumber Co.'s malicious prosecution, Malenius was damaged in reputation, caused mental pain and anxiety, prevented from attending his usual business affairs and has expended large sums in defending himself.

The Lumber Co. answered and admitted that Malenius had been a law-abiding citizen, and denied the remaining allegations of the counterclaim. Subsequently, it filed an amendment to its answer wherein it denied that it authorized Harold Seigle, its agent, to institute criminal proceedings against Malenius, denied that Seigle signed the complaint against Malenius, and asserted that the proceeding was instituted by a party or parties unknown to it.

Malenius filed interrogatories which were answered by the Lumber Co., which stated that Seigle became president of the Lumber Co. in 1942; that he was not authorized by the Lumber Co. to swear out a criminal complaint against Malenius for deceptive practices; and that he did not do so. Seigle's unlisted telephone number was typed

on the face of the complaint and it bore his purported signature.

The evidence established that Malenius was president of the Construction Co.; that Bert Hurst was credit manager of the Lumber Co., and was immediately responsible to Seigle; that in response to notice from the Circuit Clerk, directed to Harold Seigle, Bert Hurst appeared on various dates when the criminal case was set for trial; that checks drawn by the Construction Co., signed by Malenius as its president, on the State Bank of Woodstock, payable to the Lumber Co., in the total sum of $1,307.13, were charged against the account of the Lumber Co. as unpaid because the account of the Construction Co. had been closed; and that prior to trial on the counterclaim, a judgment was entered on the complaint of the Lumber Co., in its favor, and against the Construction Co., in an amount less than claimed in the complaint, and the complaint was dismissed against Malenius.

Malenius testified that the following conversation took place between Seigle and himself at the offices of the Lumber Co., prior to the issuance of the warrant against him:

"So he said, 'Well, I am going to have you thrown in jail for deceptive practice and having given us bad checks.' I said 'Mr. Seigle, I did not give you bad checks with intent of deceptive practice. It was an agreement between Mr. Mewes and myself at Elgin Lumber.' And at that time he said: 'We have to have some security,' and I said 'Fine, what do you want?' and he said 'We want a note signed for the balance of the account,' which I said that I would agree to this for Eddy Construction Company. So Mr. Mewes went out and brought in a note that was typed up, and I sat and waited and he came back with a note for the balance which they showed on their account after what we owed them. The amount was somewhere

in the neighborhood of Fourteen Hundred Dollars ($1,400.00) at that time. . . .

"Mr. Seigle presented me with the note and I signed the note as O. Edwin Malenius, President, and laid it on his desk. . . .

"He said: 'I want this signed personally by you,' and I said I can't sign that, that's not my obligation, it's the corporation's obligation. And I said I will see that you get paid, and I said I won't sign that unless I sign for Eddy Construction Company, and I said I will discuss this with my Attorney. . . .

"He said 'You pay this account immediately, or I am going to have you thrown in jail. . . .' "

Seigle testified he met Malenius only once at the office of the Lumber Co., two or three years prior to the time of the alleged conversation; and that he then only asked Malenius why he didn't pay the Lumber Co., on the account of the Construction Co., which was then past due.

After the trial before the court, wherein 8 witnesses testified for Malenius and 2 for the Lumber Co., and wherein 13 exhibits were received in evidence for Malenius and 4 for the Lumber Co., and wherein the evidence was conflicting, the court entered judgment on the counter-claim in favor of the Lumber Co., and against Malenius, and he appealed from this judgment.

On review, Malenius contends that a corporation may be held liable for a malicious prosecution instituted with its authority or if ratified by it; that the trial court's judgment in favor of the Lumber Co. was contrary to the manifest weight of the evidence; and that judicial proceedings showing no irregularity on their face are presumed to have been in all other respects regular.

The Lumber Co. argues that it did not institute the deceptive practice action; that it may not be held liable for the malicious prosecution instituted either with or without its authority since Malenius failed to meet the

94

burden of proof on malice and probable cause; that the findings and judgment of the trial court are not against the manifest weight of the evidence and should be affirmed; and that the presumption of regularity of the complaint against Malenius for deceptive practices was rebutted by Seigle's denial that he signed the complaint and his statement that he had no explanation for the appearance of his purported signature thereon.

██ In Shelton v. Barry, 328 Ill App 497, 66 NE2d 697 (1946), at page 507, the court stated:

"In general, to authorize the maintenance of an action for malicious prosecution, the following elements must be shown: (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of injury or damage as a result of the action or prosecution complained of. An action for malicious prosecution is not favored in the law. Shedd v. Patterson, 302 Ill 355, 359."

All of the elements above listed must exist in order to sustain a malicious prosecution act.

In the case at bar, the Lumber Co. denied that it instituted the deceptive practice criminal proceeding against Malenius, and further denied that he proved malice or want of probable cause on its part in connection with the institution of such proceeding. The trial court properly entered judgment for the Lumber Co., if Malenius failed to prove by the preponderance of the evidence either that the Lumber Co. instituted the criminal proceeding, or that it subsequently ratified the tortious act of its officer or agent, or if he failed to prove the malicious motives of the Lumber Co., or the lack of probable cause for its action.

95

Carbaugh v. Peat, 40 Ill App2d 37, 47, 48, 189 NE2d 14 (1963).

■ In other words, the burden was on Malenius to prove that the criminal proceeding against him was instituted by the Lumber Co. or subsequently ratified by it; and that it was a prosecution upon a demand or accusation by the Lumber Co. which had no foundation in fact. March v. Cacioppo, 37 Ill App2d 235, 244, 185 NE2d 397 (1962). In order to support the cause of action for malicious prosecution there must be both malice and want of probable cause on the part of the Lumber Co., and they must concur. Glenn v. Lawrence, 280 Ill 581, 587, 117 NE 757 (1917) ; McElroy v. Catholic Press Co., 254 Ill 290, 293, 98 NE 527 (1912) ; Hanson v. Rhodes-Burford Furniture Co., 227 Ill App 471, 472 (1923). While malice may be inferred from want of probable cause, any presumption of malice arising thereby may be overcome by evidence to the contrary. McElroy v. Catholic Press Co., supra, 294.

Seigle denied that he signed the deceptive practice complaint and denied that he had the conversation with Malenius wherein he allegedly threatened to throw him "in jail for deceptive practice." The evidence offered on the issue of the Lumber Co.'s ratification of the tortious act of its officer, or agent, was weak and lacked the power of persuasion. In this posture of the case, the trial judge was called upon to determine the factual issues involved in the proceeding. Carbaugh v. Peat, supra, 37.

In commenting upon the opportunity of the trial court or the jury, as the trier of the factual issues, to weigh the evidence, we stated in Tihay v. Aurora City Lines, 79 Ill App2d 107, 223 NE2d 171 (1967), at page 114, as follows:

"The trial judge, like the jury, was in a much better position than this court to weigh the evidence. They both had the benefit of seeing and hearing the witnesses. They saw the calm or disturbed state of the witness and noted the flush or pallor of the face in connection with the answer to certain ques-

tions. They heard the delayed and uncertain answer, as well as detected the faltering voice and its inflection, and noted the nuance and denouement attributable thereto, along with the numerous other characteristics of the witnesses which do not appear in the printed record before us."

In the case at bar there was a conflict in the evidence with reference to who commenced the criminal prosecution of Malenius, and on the issues of malice and want of probable cause. After considering the exhibits offered in evidence, and the testimony of each of the witnesses in the light of the totality of all the attendant circumstances, the trial judge determined the credibility of their testimony and made a determination of the pertinent factual issues.

Upon appeal, we are required to review cases not only as to the law, but also as to the facts, Noyes v. Hines, 220 Ill App 409, 422 (1920) ; Ill Rev Stats 1965, c 110, par 92(3)(b), and it is our duty to review the evidence and to reverse the verdicts of juries or judgments of trial courts whenever we find such verdicts or judgments clearly against the manifest weight of the evidence. Revcor, Inc. v. Fame, Inc., 85 Ill App2d 350, 356, 228 NE2d 742 (1967) ; Kropp Forge Co. v. Jawitz, 37 Ill App2d 475, 483, 186 NE2d 76 (1962). Manifest means: clearly evident, clear, plain or undisputable. Dix v. Buell, 54 Ill App 2d 80, 82, 83, 203 NE2d 290 (1964) ; Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 147, 72 NE2d 705 (1947). After giving full consideration to all of the conflicting evidence on the issues in the case at bar, we cannot hold that the findings of the trial court were against the manifest weight of the evidence. Accordingly, the judgment of the trial court should be affirmed.

Judgment affirmed.

MORAN and ABRAHAMSON, JJ., concur.