W. R. LATHOM TOOL & MACHINE COMPANY, INC., Plaintiff-Appellee, *v.*
MUTUAL LEASING ASSOCIATES, INC., *et al.*, Defendants.—
(NORTHBROOK LEASING, Intervening Petitioner-Appellant.)

Second District    No. 81-604

Opinion filed May 4, 1982.

Richard R. Haldeman and Russell D. Anderson, both of Williams, McCarthy, Kinley, Rudy and Picha, of Rockford, for appellant.

Peter S. Switzer, of Barrick, Jackson, Switzer, Long and Balsley, of Rockford, for appellee.

JUSTICE HOPF delivered the opinion of the court:
This case concerns the meaning of purchase options on two machine

lathes leased by plaintiff Lathom Tool & Machine Company, Inc. (Lathom), from defendant Mutual Leasing Associates, Inc. (Mutual), predecessor to intervening petitioner Northbrook Leasing Company (Northbrook). The trial court found that the terms of the options entitled Lathom to set the value, and as its president, W. R. Lathom, had set the value at $1, it was entitled to each machine upon tender of this amount.

The lease for each machine ran seven years. The lease on one machine ran from February 27, 1974, and the other from December 27, 1974. On December 27, 1974, as a part of the consideration for the second lease, purchase options for both machines were given to Lathom. Each purchase option stated that at the end of the lease Lathom had the option to purchase the machine leased for "the purchase option price of * * * 'Fair Market Value' determined by W. R. Lathom Tool & Machinery Co."

After the leases terminated Lathom informed Northbrook, Mutual's successor in interest, that it chose to purchase the machines, and tendered a check for $1. This was refused by Northbrook and Lathom brought this action, seeking a declaratory judgment that the purchase options provide a determination of fair market value by Lathom and by no other means of appraisal or setting. Lathom further prayed that the court order documents transferring title to it.

Evidence was adduced at trial about the leases and the negotiations and intentions that prompted the parties to agree to the options. Evidence depositions of three witnesses were also submitted to the trial court. W. R. Lathom testified that Mutual had executed and delivered to Lathom a written purchase option giving it the option to purchase the tool lathes for $1 each. Such option was not offered into evidence at trial. W. R. Lathom testified he had no idea of its whereabouts.

At the conclusion of the hearing Lathom amended its complaint, alleging in the alternative to its allegations of rights under the purchase options upon which it based the original complaint, that Mutual executed and delivered to Lathom a written purchase option for $1. The amendment to the complaint prayed for judgment as previously requested.

The trial court stated its findings in open court, consisting in pertinent part as follows:

> "[Representations made by Mutual salesman and Mutual's president at the time Mutual leased the second lathe to Lathom] led the plaintiff, Mr. Lathom, to believe that the 'fair market value as determined by the lessee' meant that the lessee could place whatever value he wanted on the goods. Otherwise, it doesn't have any meaning. If you say 'fair market value', fair market value would be fair market value. * * * The lease was prepared by the lessor.
>
> I previously indicated that I didn't think that [the $1 purchase option about which W. R. Lathom testified] existed. In other

words, [the option] wasn't a dollar. It was 'fair market value as determined by lessee.' There was testimony that a dollar figure did apply, but I can't find that from the evidence.

I think that the plaintiff's conduct is somewhat inconsistent when he went out and in fact got * * * some appraisals on the goods, but * * * most of the appraisals would indicate that the property had little or no value as far as for sale purposes. It was pretty much obsolete machinery that other people would normally not want to buy. However, there is no question that to the plaintiff it would have considerable value because he's been using them for years and probably has stock or whatever that was used * * * with that equipment. And for him to have to replace it with something else or ones of like value, it would have * * * a relatively high market value.

And I'm going to find that the plaintiff did have the right to set the value and that by setting it at a dollar * * * the title of the machinery * * * should be turned over to the plaintiff * * *."

In its written order the court found that pursuant to the purchase options Lathom had the right to set the value of the equipment. Lathom set the price at $1 and tendered that amount and was therefore entitled to both machines upon payment of $2 ($1 each).

Northbrook argues that the language of the purchase options is clear and unambiguous and the court's construction of the contract was inconsistent with its meaning. Further, Northbrook argues that as the purchase options were unambiguous, the court erred in considering parol evidence of the intent of the parties.

Finally, Northbrook argues that assuming there is ambiguity in the language of the purchase options, the decision of the trial court is contrary to the manifest weight of the evidence, even considering the parol evidence adduced at trial and in the evidence depositions.

■■ First to be decided is whether the purchase options are clear and unambiguous. It is obvious that the parties disagree as to the meaning of the purchase options. This does not necessarily mean that the contract is ambiguous, however. "[L]anguage is not rendered ambiguous simply because the parties do not agree upon its meaning." *Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 127, 392 N.E.2d 363.

The trial court obviously thought the term was ambiguous, for he commented on parol evidence, the testimony of witnesses who were former employees of the lessor which testimony indicated to Lathom that he could set any amount it wished.

■■ We do not agree that the provision is ambiguous. Its meaning can be determined simply from its words. The two phrases "Fair Market Value" and "determined by W. R. Lathom Tool & Machinery Co.," are not

inconsistent, contradictory, or mutually exclusive. Therefore, parol evidence should not have been referred to to explain the meaning of the contract.

■■ Interpretation of the contract must give weight to both phrases. "A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose." (*Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 127.) "The intention of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself, but each part of the instrument should be viewed in the light of the other parts." (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683.) "[E]ffect must be given to each word, clause, or term employed by the parties, and none may be rejected for lack of meaning or as surplusage." *Reserve Insurance Co. v. General Insurance Co. of America* (1979), 77 Ill. App. 3d 272, 280, 395 N.E.2d 933.

■■ Fair market value means the "[p]rice at which a willing seller and a willing buyer will trade." (Black's Law Dictionary 716 (4th ed. 1951).) According to the purchase option this value is to be determined by Lathom, the lessee. Lathom must make a good-faith determination of what the fair market value is, and upon its tender of this amount the machines must be transferred to it for that price. If the clause provided that the lessee could choose any amount it wishes without regard to what the market for those machines is, this would ignore the words "fair market value." Simply because the contract states that the value can be determined by Lathom, it cannot arbitrarily choose any amount. The price may not be nominal and may not be unrelated to the market value of the machines. Meaning must be given to the words "fair market value," and Lathom can determine that value, but it must be based upon what Lathom knows or discovers through inquiry to be the fair market value.

Lathom seems to argue that if the option must be tied to the fair market value then no advantage comes to it from the additional language. It does seem true that there will be little difference in meaning between a term simply stating "fair market value" and the one here stating " 'fair market value' as determined by W. R. Lathom Tool Company." Lathom's determination of value must be a reasonable reflection of the machinery's value. It can arrive at a price on the basis of its own familiarity with the business of buying and selling such machines, if it has such experience, or from investigating into the matter to determine what value others in the business place on such machines. Such determination must be accepted by the lessor. Northbrook may counter Lathom's determination of value with other estimates of the machines' fair market value only to challenge Lathom's good faith. This may not be what Lathom intended, but we

think that is what is shown by the words of the unambiguous contract to have been the intentions of both parties. *National Acceptance Co. of America v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 402, 243 N.E.2d 264.

Next to be considered is whether the ruling that Lathom can assign a $1 value to the machines is against the manifest weight of the evidence. If it is shown that the $1 amount was determined by a good-faith effort to discover the fair market value and not by reliance upon oral representations that Lathom can fix any amount it wants, then we should not disturb the judgment of the trial court, even if Northbrook can show that others estimate the value to be much higher.

W. R. Lathom testified that the controls on the machines are obsolete and that service for the machines is next to impossible. It would take, perhaps, six months to get repairs made. On cross-examination he testified that in his opinion the machines are worthless "to most everybody." He also testified under cross-examination that he asked Behr Machinery Company to give him a value on the machines and was told by that company that the machines are worth their scrap value. Another company told him it would not be able to resell the machines.

We conclude that it is against the manifest weight of the evidence to find that Lathom determined the fair market value of the machines to be $1. The evidence shows that he was told they were worth their scrap value. The fair market value for scrap, at least, must be determined by Lathom. The fact that another company could not resell the machines does not mean they were completely valueless. Lathom's $1 price was an arbitrary determination. We conclude the judgment that Lathom was entitled to the machines for $1 apiece is against the manifest weight of the evidence. See *Elgin Lumber & Supply Co. v. Malenius* (1967), 90 Ill. App. 2d 90, 97, 232 N.E.2d 319.

In its complaint Lathom only asks for a declaration of its rights. By this decision these rights are declared. There is no further controversy; therefore, there is no need for remand. We reverse the judgment of the Winnebago County Circuit Court.

Reversed.

LINDBERG and NASH, JJ., concur.