**CORN PRODUCTS, Plaintiff,**

v.

**CARDINAL CHEMICAL CORPORATION,**
**Defendant.**

**No. 86 C 7700.**

United States District Court,
N.D. Illinois, E.D.

July 20, 1987.

James W. Gladden and Robin B. Katz, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

David J. Lloyd, Berger, Newmark & Fenchel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Corn Products, a unit of Corn Products International, Inc. ("Corn Products"), brings this diversity action against the assignee of its contract, defendant Cardinal Chemical Corporation ("Cardinal"), to recover a debt owed Corn Products by the assignor of its contract, Fisher-Calo Chemicals and Solvents ("Fisher-Calo"). Currently before the Court is Cardinal's motion for summary judgment under Fed.R.Civ.P. 56(c). For the reasons noted below, we grant that motion.

### I.

In January 1984, Corn Products entered into a contract with Fisher-Calo to purchase Corn Products' requirements of sul-

fur dioxide exclusively from Fisher-Calo. The sulfur dioxide was sold in returnable cylinders. Under this contract, Corn Products would pay a deposit to Fisher-Calo of $750.00 for each cylinder, and when Corn Products returned each cylinder to Fisher-Calo, it was to be given a credit against future purchases. During 1984 Corn Products returned a large number of cylinders and was given credit memos by Fisher-Calo totalling in excess of $50,000. Corn Products off-set some of the credits against purchases of other gases from Fisher-Calo, resulting in a reduction of the credits to $46,144.08. It is this amount that Corn Products seeks to recover from Cardinal.

In late 1984 and early 1985, Alexander Chemical Corporation negotiated with Fisher-Calo to purchase Fisher-Calo's cylinder gas division under the name of its subsidiary Cardinal. The parties entered into an Asset Purchase Agreement which represents on its face that it was entered into on December 31, 1984, although the entire transaction did not close until January 16, 1985. At any rate, it is clear that Corn Products' debt had already arisen by the time any agreements were entered into. One of the documents executed at the closing of this transaction was titled "Assignment and Assumption of Contracts" dated January 16, 1985.[1] Attached and made a part thereof to the Assignment and Assumption of Contracts was Exhibit A which included Corn Products' contract with Fisher-Calo as one of the contracts assigned to Cardinal. Shortly after the closing, Fisher-

---

1. ASSIGNMENT AND ASSUMPTION OF CONTRACTS

FISHER–CALO CHEMICALS AND SOLVENTS CORPORATION, an Illinois corporation, with its principal place of business at 600 West 41st Street, Chicago, Illinois, ("Assignor"), for and in consideration of a $10.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, hereby grants, bargains, conveys, tranfers, and assigns to CARDINAL CHEMICAL CORPORATION, an Indiana corporation, with its principal place of business at First Plant Road, Kingsbury Industrial Park, Kingsbury, Indiana, ("Assignee"), all of Assignor's rights under such of the existing orders and contracts for the purchase and sale of gases, chemicals and products relating to Assignor's

compressed gas division located in Kingsbury, Indiana as are designated in Exhibit A, attached hereto and made a part hereof.

Assignee hereby assumes and agrees to perform any and all obligations due under such contracts after the date hereof.

This Assignment and Assumption shall be binding upon the heirs, legal representatives, successors and assigns of Assignee.

This Assignment and Assumption is executed and delivered in conjunction with the closing of the Asset Purchase Agreement between the Assignor and Assignee dated December 31, 1984.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment this 16th day of January, 1985.

Calo filed a Chapter 11 petition for bankruptcy.

## II.

Summary judgment is appropriate only where the moving party demonstrates that no genuine issue of material fact exists and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 460 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

The underlying contract between Corn Products and Fisher-Calo, which was then later assigned to Cardinal, was a requirements contract for the sale of food grade sulfur dioxide. As such, this was a contract for the sale of goods under the Uniform Commercial Code ("UCC"). Ill.Rev. Stat. ch. 26 ¶ 2–105(1) (1985).[2] " 'Goods' means all things ... which are movable at the time of identification to the contract for sale...." *Id. See also Sinka v. Northern Commercial Co.*, 491 P.2d 116, 118 (Alaska 1971) (sale of pearl kerosene was the sale of goods under the UCC); *Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157,

569 P.2d 751 (1977) (gasoline was good under UCC); *Mansfield Propane Gas v. Folger Gas Co.*, 231 Ga. 868, 204 S.E.2d 625 (1974) (contract for the sale of plaintiff's propane gas requirements was a contract for the sale of goods under the UCC).

Under the UCC, "[a]n assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the *language* or the circumstances (as in an assignment for security) indicate to the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties." Ill.Rev.Stat. ch. 26 ¶ 2–210(4) (1985) (emphasis added).

Corn Products contends that there are five genuine issues of material fact which preclude the granting of Cardinal's motion for summary judgment.[3] The first alleged genuine issue of fact is really a genuine issue of law; and the rest, although perhaps genuine issues of fact, are not *material* issues of fact. "[T]he mere existence of *some* alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Ins.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**2.** The parties have assumed that Illinois law applies to this action. Since the result we reach should be the same under the law of any state which has adopted the Uniform Commercial Code, we need not address the conflicts issue.

**3.** The following are the alleged issues of material fact:

1. Defendant's interpretations of the contract under which defendant purchased the cylinder gas division of Fisher-Calo Chemical and Solvents Corporation ("Fisher-Calo") contradicts the plain English meaning of the documents themselves.

2. There are questions of fact as to the nature of the contract between Corn Products and Fisher-Calo assumed by defendant and as to the amounts due to Corn Products as credits on its future purchases.

3. The deposition testimony and affidavit of defendant's president, Gillman, Leavitt, are contradicted by a January 4, 1987 bulk sales notice

issued by defendant and by the plain language of the agreement between defendant and Fisher-Calo, and Leavitt was also impeached in his deposition. In short, Leavitt's credibility as a witness is at issue.

4. To the extent that defendant might seek to rely on parol evidence from the president of Fisher-Calo, David Fisher, that evidence too is suspect inasmuch as Fisher has an agreement to provide consulting services to defendant for a ten-year period commencing in February 1987 which Fisher expects to bring him $100,000 to $150,000. In addition, Fisher was impeached in his deposition.

5. Discovery thus far has disclosed evidence of a possible fraud upon creditors, and Corn Products must be allowed to pursue this issue on its own behalf and perhaps on behalf of other customers of Fisher-Calo left in similar circumstances by Defendant's refusal to honor credits due against future purchases.

Both parties agree that the terms of the contract at issue, the Assignment and Assumption of Contracts, are clear and unambiguous. The parties disagree, however, upon the meaning of the terms. Yet " 'language is not rendered ambiguous simply because the parties do not agree upon its meaning.' " *W.R. Lathom Tool & Machine v. Mutual Leasing,* 105 Ill.App.3d 1043, 1045, 61 Ill.Dec. 813, 815, 435 N.E.2d 510, 512 (2d Dist.1982). This brings us to the one *material* issue in Corn Products' list of material issues: the proper interpretation of the Assignment and Assumption of Contract. This, however, is a question of law for this Court to decide, if we can do so without reference to extraneous evidence.

Cardinal contends that the plain meaning of the assignment is that it only makes Cardinal responsible for the duties of Fisher-Calo under the assigned contracts that arose *after* the date of the assignment, January 16, 1985. Corn Products, on the other hand, contends that the assignment makes Cardinal responsible for all the obligations of Fisher-Calo under the assigned contracts without regard to when those obligations arose. We disagree. The language at issue states: "Assignee hereby assumes and agrees to perform any and all obligations due under such contracts *after* the date hereof" (emphasis added). Corn Products contends that if Cardinal and Fisher-Calo had intended the assignment to apply only to those obligations that arose after the date of the assignment, then the parties would have used such explicit language. However, by that same token, if the assignment was intended to make Cardinal responsible for any and all obligations of Fisher-Calo under the assigned contracts without reference to when the obligations arose, then the parties could have inserted language which explicitly stated such an expansive obligation.

We find that the language as it stands is unambiguous and that the use of the word "after" makes it clear that the assignment was only intended to delegate the obligations of Fisher-Calo with respect to the assigned contracts that arose *after* January 16, 1985.

---

Because we find that the language of the assignment is clear and unambiguous, we need not consider extraneous evidence attesting to the intent of Cardinal and Fisher-Calo under the assignment. There are, therefore, no material issues of fact precluding our granting Cardinal's motion for summary judgment.[4] Accordingly, we grant defendant Cardinal's motion for summary judgment. It is so ordered.

---

4. The last of Corn Products' five alleged disputes of material fact, *see* n. 3 above, contends that we must not grant summary judgment because Corn Products has uncovered evidence of a "possible fraud upon creditors" of Fisher-Calo. This, however, is not the appropriate place in which to raise such a fraud. If there has been a fraud upon the creditors of Fisher-Calo, it should be brought to the attention of the bankruptcy court for resolution, especially when the alleged evidence does not implicate Cardinal in the alleged fraud. (Plaintiff's Response at 13).