65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
PRIME LEASING, INCORPORATED, an Illinois corporation,
Plaintiff-Appellee,
v.
AETNA LIFE INSURANCE COMPANY, a Connecticut corporation,
Defendant-Appellant.
 No. 95-1249.
 United States Court of Appeals, Seventh Circuit.
 Argued June 8, 1995.
Decided Aug. 22, 1995.
 
 Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Aetna Life Insurance Company appeals a judgment against it for $420,000 in this contract action. The district court's jurisdiction was based on diversity of citizenship. For the reasons stated in the following paragraphs, we vacate the judgment of the district court and remand the case to permit the district court to elaborate further on its reasons for entering the judgment.
 
 
 2
 In late December 1985, the plaintiff, Prime Leasing, Inc., entered into a master lease agreement with Aetna Life Insurance Company. Under the terms of the agreement, Prime leased a telecommunications system to Aetna for use at Aetna's headquarters in Middletown, Connecticut. The leased system consisted of a switching apparatus, telephones, three types of cable, and jacks. Under the terms of the agreement, Aetna had an option to purchase the leased equipment at its "fair market value" at the expiration of the contract.
 
 
 3
 In August 1993, Aetna informed Prime that it did not intend to renew the agreement. Aetna returned the switch equipment to Prime but elected to retain the cable and jacks. Aetna offered to pay for the equipment either by delivering new equivalent cable to Prime or by paying Prime the fair market value of the cable. A dispute then arose over setting the "fair market value" of the cable and jacks. An appraisal and marketing firm hired by Prime valued the entire system at $1,480,000 and the cable and jacks at $600,000. Another evaluation, performed by the manufacturer of the switching system, valued the system at $1,300,000. Aetna took a different view. It claimed that Prime Leasing's figures represented the "in-place value" of the equipment and not the "fair market value" contemplated by the agreement. Aetna fixed the fair market value at $107,000--a figure based on quotations it had obtained from two vendors for new cable and jacks. Because of this disagreement, Prime filed this action in the district court seeking a declaration that the fair market value of the equipment for purposes of the agreement was $585,000 and a judgment declaring that Aetna must either pay the $585,000 or return the equipment.
 
 
 4
 The district court, relying on paragraph 22 of the lease, noted that the contract provisions contemplated that the fair market value meant "the price of a disinterested third party 'under no compulsion to buy' would be willing to pay, and not its current value as an installed system at Aetna's headquarters." Mem.Op. at 8 (Aug. 3, 1994). In a series of interlocutory orders, the court then confronted the issue of whether the equipment ought to be valued as part of an operating system or as scrap. The court ultimately concluded that, although any subjective value to Aetna ought not be considered in the calculus, it was a question for trial as to whether the equipment would be resold as part of an installed and operating system or sold as scrap.
 
 
 5
 A bench trial followed. At trial, Prime presented as a witness the President of Source, Inc. This witness reported that the fair market value of the system was $1,480,000 and that the fair market value of the now-disputed portion of the system was $600,000. This was not an evaluation that took into account the subjective value of the equipment to Aetna. Prime also asked that Northern Telecom, the equipment's manufacturer, determine the systems' fair market value. Northern Telecom determined that the fair market value of the system was $1,300,000.
 
 
 6
 Aetna, again, took a different view. It noted that it had offered to pay for the equipment either by delivering new equivalent cable to Prime or by paying Prime the fair market value of the cable, whichever Prime preferred. Aetna also disputed the appraisers' evaluation of the system. It claimed that the "fair market value" was $107,000--a figure derived from quotations for new cable and jacks. Based on those quotations, Aetna had offered to pay Prime $120,838.50 as the cost of new cable.
 
 
 7
 At the conclusion of the bench trial, the district court entered a judgment of $420,000 in favor of Prime. In its findings of fact and conclusions of law, the court determined that new cable and jacks of the same type and quantity as those covered by the lease would cost $220,000. It further determined that used cable and jacks, eight years old, would sell for no more than 40% of the new equipment price. Turning to Prime's valuation of the equipment, the court determined that the estimate took into account the expense of labor to install the equipment in a new location. In the court's view, the lease did not include the cost of such installation. The court further found that installation labor is generally 30% of the cost of a telecommunication system.
 
 
 8
 The court also determined that the fair market value of the disputed equipment was not the scrap value offered by Aetna. Rather, the court found that the correct approach, which mirrored to a very great extent that of Prime, was to value the equipment on the assumption that it had been de-installed from Aetna's facility and then hypothetically reinstalled in a comparable facility. The lease specifically provides, the court noted, that the lessor has the right to determine, in good faith, the value of the equipment and, held the court, Prime's basic approach was the reasonable discretion afforded to Prime under the lease agreement. The court adjusted downward Prime's valuation by 30% because, as the district court read the lease, it did not require Aetna to pay the cost of installation labor.
 
 
 9
 Before this court, Aetna challenges the district court's determination of the value of the equipment. Aetna submits that Prime has not made a good faith appraisal of the value of the equipment. In Aetna's view, the in-place valuation of the equipment adopted by the district court is not a good faith estimate. It challenges the adequacy of the evaluation process on the ground that Prime engaged the assistance of entities that were not experienced in valuations of the equipment. In its view, the approach submitted by Prime and adopted by the district court does not reflect any comparable transaction in the real business world. It points out that the values assigned to the equipment are far in excess of the $220,000 that the district court found would be the value of new comparable equipment and even more in excess of the value of used equipment which, according to the district court, ought to be appraised at no more than 40% of the value of new equipment ($88,000). Aetna urges that the district court's findings of fact are internally inconsistent because, although the court found the value of new and used wiring to be as we have just stated, and although the district court held that labor costs of installation are not properly included within the value of the equipment, the court nevertheless fixed a value greatly in excess of the material costs. Aetna then notes that, even if the basic methodology of Prime is acceptable, the court's estimation of the labor installation costs as only 30% of the total cost is not realistic and contrary to the record.
 
 
 10
 As the district court noted, the lease gives Prime, as the lessor, the right to determine the fair market value of the equipment in accordance with the definition in the lease. See Mem.Op. at 7 (Dec. 9, 1994). This right does not, however, give Prime unfettered discretion in fixing the sale price. It is necessary that the price be determined in good faith. See W.R. Lathom Tool & Machine Co. v. Mutual Leasing Assoc., Inc., 435 N.E.2d 510, 513 (Ill.App.Ct.1982). In its conclusions of law, the district court determined that Prime's valuation approach, adjusted to discount installation costs, was within the "reasonable discretion afforded to Prime under the lease agreement and [was] not an arbitrary determination." Mem.Op. at 10 (Dec. 9, 1994). Without further elaboration by the district court, however, we cannot determine the basis for its conclusion and therefore cannot discharge our obligation to review its determination. The district court accepted the testimony of Messrs. Potter and Thompson who testified on behalf of Prime. Given the complexity of the record, however, we cannot discern, from that statement and our own examination of the cold record, the basis of the district court's conclusion that the sale price fixed by Prime was the product of a good faith process of valuation. Nor is it readily discernible to us why the district court believed that the installation cost ought not be counted or why it ought to be at 30%.
 
 
 11
 Because the findings of fact and conclusions of law of the district court do not disclose adequately the basis of the district court's determination, we vacate its judgment and remand the case to that court to afford it the opportunity to provide additional elaboration. See Andre v. Bendix Corp., 774 F.2d 786, 801 (7th Cir.1985). Although we do not want to be misunderstood as requiring such action, we believe the district court ought to have the discretion to take additional evidence if, in the judgment of the court, such action would permit it to respond more comprehensively and expeditiously to the need that we have identified. We leave that matter to the district court. Finally, we note--indeed we emphasize--that we do not intimate, in any way, a conclusion as to the appropriate disposition of this case. We hold only that, before we can address that issue, we need, in more plenary fashion, the findings and analysis of our colleague in the district court.
 
 
 12
 Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings in conformity with this opinion. No costs shall be recovered in this court.
 
 
 13
 IT IS SO ORDERED.